Wilder, J.
The first question presented to this court for determination by the plaintiffs in error, is, did the court below err in proceeding to hear the matter before it on motion ?
It was a motion to set aside an entry of satisfaction of a judgment, and to amend an execution on the judgment, which satisfaction, it was claimed, was wrongfully entered, and the motion was heard on affidavits.
Every court has control over its process, and of entries upon its records, and whenever process is irregularly issued, or an entry of the satisfaction of a judgment is improperly made, the court has power to inquire into the subject, and to cause the former to be set aside, and the latter to be vacated *468 It is believed to be the uniform practice to do so on motion. This, it is true, is a summary mode of procedure, and impor tant rights and interests and difficult questions may be involved, which are summarily tried by the court without the intervention of a jury, but these objections have not been regarded as sufficient to prevent courts from exercising their jurisdiction in this manner.
In the case of Laughlin and others v. Fairbanks and others, 8 Missouri Rep. 367, a judgment had been assigned, and the debtors, with notice of such assignment, paid the amount to the judgment creditor, and procured from him a receipt for the same, and thereupon the judgment creditor made an indorsement on the execution, directing the sheriff to return the same satisfied; it was held that such indorsement might be vacated on motion, and a new execution issued. In that case the objection was taken, that the motion, involving questions of law and fact, could not be entertained and tried by the court, but the court said: “We entertain no doubt that a motion was a proper and legal mode to effect the object desired by the plaintiffs in the motion.”
A further reply, were it necessary, may be given to this claim of the plaintiff in error. No objection appears to have been made by him, to this mode of procedure at the time of the hearing, and it not being then taken it should be considered as waived.
Did the court err in setting aside the satisfaction of the judgment, on the facts in proof before them?
The original suit was on a bond, executed by J. M. Tooker and Wilson to Stilwell, conditioned in substance, as held by this court (9 Ohio St. Rep. 467), for the payment of all the debts of the then late firm of J. M. Tooker & Co., of which firm Stilwell had been a member, and these defendants were creditors. Stilwell and Tooker had become insolvent.
In said original suit, these defendants were at first made co-plaintiffs with Stilwell, the suit in form being brought in the name of Stilwell, for their use. It being held by the court that they were improperly joined as plaintiffs, an amended petition was filed making them co-defendants with Tooker and *469 Wilson, and setting out their claims respectively, which were in judgments against Tooker and Stilwell.
In the adjudications which followed, the court found the amount due to each of the defendants, from J. M. Tooker & Co., and rendered judgment in favor of Stilwell against Tooker, as principal, and Wilson as surety for the aggregate amount of said debts.
The court ordered that Tooker and Wilson should have the privilege of paying to the defendants respectively the sums of money so found due to them, and that upon such payments, Tooker and Wilson should receive credit therefor on the judgment, but the court did not order that payments should be so made.
The affidavits read on the behalf of the defendants, show that the counsel in the original suit was employed by the defendants ; that the suit was, in fact, prosecuted in the name of Stilwell, at their expense and for their benefit; and it was understood between them and Stilwell that they were to have the benefit of the judgment; that nothing had been paid to them on their claims; that the entry of satisfaction had been given, and the entry of satisfaction made without their knowledge or consent, and, as they alleged, in fraud of their rights.
Wilson denied all fraud and collusion, claiming that he had a right to make a compromise and settlement of the judgment with Stilwell. He showed that with Stilwell he did make such compromise and settlement, paying to him $500 in cash, and agreeing to pay all attorney’s fees, which he was ready to do.
Some other facts are stated in the affidavits, but none having a material bearing on the proper determination of the case.
Under the foregoing facts, it is claimed by the counsel for the plaintiff in error, that the bond was entirely personal to Stilwell, and only for his protection against the payment of the firm debts. That it did not create a fund for the payment of those debts, and that Stilwell alone had any interest in it. They cite, as sustaining these views, the case of The Ohio Life Insurance and Trust Company v. Reeder and others, 18 *470 Ohio Rep. 85. That case was, however, very unlike the present. A debtor had given a mortgage to his indorser to indemnify him against liability on his indorsement. The court held that the creditor could not be substituted to the right of the surety, when no judgment had been recovered against either principal or surety, and when there was no allegation that the parties were insolvent, or that the debt could not be collected by judgment and execution at law. The court say : “ It will be seen that the mortgages are not given for the purpose of securing the plaintiff’s claim; nor for the purpose of raising a fund out of which the debt was to be paid. If so, a court of chancery would hold the mortgagee as trustee of complainants, and would subjéct the property to the accomplishment of the object of the trust.”
In the case before us, the bond was not a bond of indemnity, but for the payment of the debts of the firm, as heretofore decided by this court, and, as we think, did create a fund for the payment of those debts. It was so regarded and treated by the defendants and by Stilwell, until after the recovery of the judgment.
When Tooker took the property of the firm, and assumed the obligation to pay its debts, and gave to Stilwell the bond to secure the fulfillment of that obligation, as between themselves, Tooker became the principal debtor, and Stilwell surety. As between the creditors and Stilwell he was a trustee, and held the bond as a trust fund, which they had a right to have subjected to the satisfaction of their claims.
In this respect it is wholly immaterial that Wilson was merely a surety on the bond for Tooker.
Wilson, in his affidavits, does not deny that he had knowledge of the defendants’ interests in the bond and the judgment, and from the manner in which the defendants were connected as parties with the suit and judgment, it is clear he must have had such knowledge.
Stilwell holding the judgment thus, in trust for the defendants, and Wilson having notice of all the material facts, could he, without the consent of the defendants, obtain from Stilwell a valid discharge of the judgment, without its pay- *471 meat ? Upon clear and well established principles of equity we think he could not. A discharge of the judgment without payment, was clearly a breach of trust on the part of Stilwell, and a fraud upon the rights of these defendants. Wilson was privy, and a party to the breach of trust, and can consequently gain no advantage by it.
On the proof before them, we think the court below were warranted in finding that the entry of satisfaction and discharge of the judgment was wrongfully made, and did not err in ordering it to be set aside, or in awarding’ execution upon the judgment for the use of the defendants.
Execution was, however, awarded for the full amount of the judgment, when, from the proof, it was shown that $500 had been paid by Wilson to Stilwell thereon; and this is the remaining ground of error assigned by the plaintiff in error.
Had there been an assignment of the bond or judgment by Stilwell to the defendants, with notice of the assignment to Wilson, it is clear, from the authorities cited by the defendant’s counsel, that no payment to Stilwell could protect or avail Wilson; for it is fully settled, by numerous decisions, that courts of law will take notice of and protect the rights of assignees against all persons having a knowledge of the trust. Legh v. Legh, 1 Bos. & Pul. 447; Welch v. Mandeville, 1 Wheaton, 233; Martin v. Hawks, 15 Johnson, 405.
But the defendants did not occupy the position of assignees, with notice to Wilson. There was no assignment in form or in terms, and none of which Wilson had notice. The relation between Stilwell and the defendants was simply that of trustee and cestui que trust.
When the original judgment was rendered, there was no order of the court that payment should be made to the defendants, nor does there appear to have been any notice ever given by the defendants to Tooker or Wilson not to pay to Stilwell. It was simply ordered by the court, that Tooker and Wilson “ have the privilege ” of paying to the defendants; Stilwell was to remain their trustee, and the trust fund to continue in his hands. A payment to him of the full amount of the judgment would, beyond controversy, have satisfied and discharged *472 it. Wilson, in his affidavit, denies all bad faith and intentional wrong, and doubtless supposed, as he testifies, that he had the legal right to procure a satisfaction of the judgment in the manner in which it was sought to be done. Under such circumstance, and for these reasons, we think he should have been credited with the $500, which he actually paid in money to Stilwell.
The order of the court below in awarding execution for the full amount of the judgment, for the use of the defendants, should, therefore, be modified so 'far as to allow Wilson such credit. In all other things the orders and judgment -of the court below are affirmed.
Brinkerhoee, C.J., and Scott, Ranney and White, JJ., concurred.